UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>STUART H. SOJCHER<br><br>Defendant | Crim. No. 10-cr-10426 NG<br><br>18 U.S.C. §1343 (Wire Fraud)<br>18 U.S.C. §2 (Aiding and Abetting)<br>18 U.S. C. §1957<br>(Monetary Transactions in Proceeds of Specified Unlawful Activity)<br>18 U.S.C. §§981, 982 (Criminal Forfeiture)<br>28 U.S.C. §2461 (Criminal Forfeiture) |

**INDICTMENT**

The Grand Jury charges:

GENERAL ALLEGATIONS

At all times relevant to the charges in this Indictment:

Background

1. STUART H. SOJCHER ("SOJCHER") was an individual living in Massachusetts and was an attorney licensed to practice law in the Commonwealth of Massachusetts.

2. Premium Capital Funding ("Premium Funding") was a real estate mortgage lender headquartered in Jericho, New York.

3. Wilmington Finance ("Wilmington Finance"), a division of AIG Federal Savings Bank, was a real estate mortgage lender headquartered in Plymouth Meeting, Pennsylvania.

4. Quicken Loans, Inc. ("Quicken Loans") was a mortgage lender headquartered in Livonia, Michigan.

5. First American Title Insurance Company ("First American") was a title insurance company headquartered in Santa Ana, California. First American offered title insurance for properties purchased in various states, including Massachusetts.

6. J.F. was an individual known to the Grand Jury as a "straw buyer" for two properties. As used in this Indictment, the term "straw buyer" refers to an individual in whose name title to real property was taken and in whose name financing from the mortgage lenders was fraudulently obtained. In most instances, a straw buyer makes no down payment, pays no closing costs, has no intention of residing in the real property, and has no personal ability or intention to make the mortgage loan payments.

Sojcher's Law Practice

7. As part of his law practice, SOJCHER performed real estate closings for properties located in Massachusetts.

8. A closing attorney, or "closing agent," is responsible for following the closing instructions provided by mortgage lenders including, among other things, receiving the loaned funds, disbursing loaned funds to the seller and paying off pre-existing mortgages as directed.

9. Mortgage lenders also commonly direct closing attorneys to procure title insurance that covers the lender for an amount equal to the loan on the property. Title insurance is insurance against any encumbrances and other possible problems with the title to the property.

10. SOJCHER was an authorized agent of First American and was authorized to sell First American title insurance policies to purchasers of property in Massachusetts. SOJCHER was authorized to sell First American title insurance policies only after performing title searches and determining that there were no encumbrances on the properties in question. To the extent that

properties were subject to previous mortgages and other encumbrances, SOJCHER was responsible for clearing such encumbrances by, for example, causing the previous mortgages to be paid off and released, before he was permitted to issue a title insurance policy. As compensation for his services in selling and issuing the First American policies, SOJCHER was permitted to retain 70% of the premium on each policy.

11. SOJCHER maintained two escrow accounts, also known as conveyancing accounts, with account numbers ***8099 (the "8099 Account) and ***8439 (the "8439 Account"), at Boston Private Bank & Trust Company, a bank with offices in Massachusetts, the deposits of which are insured by the Federal Deposit Insurance Corporation. In performing real estate closings, SOJCHER arranged for the deposit of loaned funds into his conveyancing accounts.

## SOJCHER'S FRAUD

12. As detailed below, between January and April 2006, SOJCHER defrauded at least two mortgage lenders and First American by orchestrating sham sales, submitting false loan documentation to the lenders, and then misappropriating loaned funds rather than disbursing those funds to pay off the pre-existing mortgages. SOJCHER also performed a closing for a legitimate sale but diverted the proceeds of the loaned funds for his own purposes rather than using those funds to pay the seller.

### 1736 and 1742 Liberty Street, Braintree, Massachusetts

13. In or about January 2006, SOJCHER served as the closing agent for sham sales of properties located at 1736 Liberty Street, Braintree, Massachusetts ("1736 Liberty Street") and 1742 Liberty Street, Braintree, Massachusetts ("1742 Liberty Street") (collectively, the "Liberty Street Properties"). Using documents prepared by SOJCHER, over the course of approximately two

weeks, a straw buyer, J.F., purported to purchase each of the Liberty Street Properties from G.C.

14. SOJCHER submitted loan documents to the mortgage lenders for each sale, which falsely represented, as to each property, that J.F. intended to live in the property in question as his residence. The documents also falsely represented the amount of funds that J.F. had paid in connection with each of the purchases.

15. In connection with these "sales," and based on the fraudulent loan documentation submitted by SOJCHER, J.F. obtained a mortgage loan for each property. One loan, from Wilmington Finance, funded the purchase of 1742 Liberty Street. A Second loan, from Premium Funding, funded the purchase of 1736 Liberty Street. The loaned funds, which exceeded $1,300,000 in the aggregate, were wired into SOJCHER's 8099 Account. Rather than disbursing the loan proceeds to pay off the prior mortgages on the Liberty Street Properties, SOJCHER diverted most of the loan proceeds to pay other debts.

16. SOJCHER issued a First American title insurance policy for each of the Liberty Street Properties.

<u>39 Upham Street, Unit 1, Malden, MA</u>

17. In or about April 2006, SOJCHER served as the closing agent for the sale of 39 Upham Street, Unit 1, Malden, MA ("Upham Street Property") from the Managers of 39 Upham Street LLC ("Upham Street LLC") to N.B. and M.D. In connection with the sale, N.B. and M.D. secured mortgage financing totaling approximately $245,000 from Quicken Loans, which funds were wire transferred into SOJCHER's 8439 Account. N.B. and M.D. also provided SOJCHER with approximately $33,000 in connection with the sale, which amount was also deposited into SOJCHER's 8439 Account. Rather than disbursing these funds to the seller, SOJCHER diverted

all of the loaned proceeds for other purposes.

18. SOJCHER issued a First American title insurance policy for the Upham Street Property.

COUNTS ONE-FOUR
(Wire Fraud)
18 U.S.C. §§1343 and 2

19. The Grand Jury realleges and incorporates by reference the allegations in paragraphs 1-18 of this Indictment, and further charges that:

20. On or about the dates set forth below, at Boston, in the District of Massachusetts and elsewhere,

STUART H. SOJCHER

defendant herein, having knowingly devised a scheme to defraud and to obtain money and property by means of material false and fraudulent pretenses, representations and promises, transmitted and caused to be transmitted in interstate commerce, wire communications, including writings, signals, and sounds, for the purpose of executing such scheme to defraud, as set forth below:

| **Count** | **Date** | **Wire Transmission** |
|---|---|---|
| **1** | 1/9/06 | $613,375 wire transfer from Wachovia NA PA on behalf of Wilmington Finance, a division of AIG Federal Savings Bank to SOJCHER's account number ***8099 at Boston Private Bank & Trust Company |
| **2** | 1/27/06 | $754,208 wire transfer from Bank of New York on behalf of Premium Capital Funding to SOJCHER's account number ***8099 at Boston Private Bank & Trust Company |
| **3** | 4/27/06 | $24,789 wire transfer from JP Morgan Chase on behalf of Quicken Loans, Inc. to SOJCHER's account number ***8439 at Boston Private Bank & Trust Company |
| **4** | 4/27/06 | $215,696 wire transfer from JP Morgan Chase on behalf of Quicken Loans, Inc. to SOJCHER's account number ***8439 at Boston Private Bank & Trust Company |

All in violation of 18 U.S.C. §§1343 and 2.

COUNTS FIVE-TEN
(Monetary Transactions in Specified Unlawful Activity)
18 U.S.C. §1957

21. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 18 of this Indictment and further charges that:

22. On or about the dates set forth below, at Boston, in the District of Massachusetts and elsewhere,

STUART H. SOJCHER,

defendant herein, acting directly and through others, did knowingly engage in and attempt to engage in monetary transactions, by, through, and to a financial institution affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, which monetary transactions involved the proceeds of specified unlawful activity, that is wire fraud as set forth in Paragraphs 1 - 16 and Counts One and Two herein, in violation of 18 U.S.C. §1343, as set forth below:

| **Count** | **Date** | **Transaction** |
|---|---|---|
| 5 | 1/10/06 | Payment of $157,475 to L.F.L. (Check No. 5713 drawn on SOJCHER's account number ***8099 at Boston Private Bank & Trust Company) |
| 6 | 1/11/06 | Payment of $90,350 to J.R. (Check No. 5166 drawn on SOJCHER's account number ***8099 at Boston Private Bank & Trust Company) |
| 7 | 1/27/06 | Payment of $263,063 to R.M (Cashier's Check drawn on SOJCHER's account number ***8099 at Boston Private Bank &Trust Company) |
| 8 | 2/1/06 | Payment of $125,000 to S.L. (Check No. 191 drawn on SOJCHER's account number ***8099 at Boston Private Bank & Trust Company) |
| 9 | 2/1/06 | Wire transfer of $30,000 to J.D.I. from SOJCHER's account number ***8099 at Boston Private Bank and Trust Company |

| | | |
|---|---|---|
| 10 | 2/1/06 | Wire transfer to B.L. of $30,000 from SOJCHER's account number ***8099 at Boston Private Bank and Trust Company |

All in violation of 18 U.S.C. §§1957 and 2.

## FORFEITURE ALLEGATIONS
(18 U.S.C. §§ 981(a)(1)(C), 982(a)(1) & 28 U.S.C. § 2461(c))

23. Upon conviction of the offenses in violation of 18 U.S.C. §§ 1343 and 2 alleged in Counts One through Four, the defendant,

STUART H. SOJCHER,

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, that constitutes, or is derived from, proceeds traceable to the commission of the offenses.

24. Upon conviction of the offenses in violation of 18 U.S.C. §§ 1957 and 2 as alleged in Counts Five through Ten, the defendant,

STUART H. SOJCHER,

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real and personal, involved in such offense, and all property traceable to such property.

25. If any of the property described in paragraphs 23-24 hereof as being forfeitable pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1) and 28 U.S.C. § 2461(c), as a result of any act or omission of the defendant --

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with a third party;

c. has been placed beyond the jurisdiction of this Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to 18 U.S.C. § 982(b) and 28 U.S.C. § 2461(c), incorporating 21 U.S.C. § 853(p), to seek forfeiture of all other property of the defendant up to the value of the property described in subparagraphs a through e of this paragraph.

All pursuant to 18 U.S.C. §§981 and 982 and 28 U.S.C. §2461(c).

A TRUE BILL

FOREPERSON OF THE GRAND JURY

SARAH E. WALTERS
ASSISTANT U.S. ATTORNEY

DISTRICT OF MASSACHUSETTS; December 15, 2010

Returned into the District Court by the Grand Jurors and filed.

DEPUTY CLERK
12/15/10